**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMMY SCHARLATT,

      Plaintiff,

      v.

JO ANNE B. BARNHART, Commissioner of Social Security Administration,

      Defendant.
_____/

No. C 04-04724 PJH

**MEMORANDUM DECISION AND ORDER THEREON**[1]

      Emmy Scharlatt ("Scharlatt") seeks judicial review of the Commissioner's decision denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g). Having considered the parties' cross-motions, the pertinent legal authorities, and having reviewed the administrative record, the court hereby remands this case to the Commissioner for further proceedings in accordance with this court's order.

**BACKGROUND**

      Scharlatt applied for Social Security disability insurance benefits on January 11, 2002, alleging disability beginning October 16, 1996. The Social Security Administration denied her application initially and on reconsideration. Scharlatt filed a request for hearing, which was held before an administrative law judge ("ALJ") on August 29, 2003. The ALJ rendered an unfavorable decision on November 26, 2003, denying Scharlatt's application. The Appeals Council denied review, and the ALJ's decision was affirmed on May 5, 2004. Scharlatt filed this action on April 6, 2005.

      Scharlatt was forty-two years old at the time of the hearing. Administrative Record

---

[1] Pursuant to Civil Local Rule 7-13, this order may not be cited except as provided by Civil Local Rule 3-4(e).

("A.R.") 483. She is married and has a seven and a half year old son. A.R. at 494. Scharlatt obtained her Masters Degree in 2003, but most of her course work was finished prior to her October 1996 onset date. A.R. 477. Scharlatt did not complete any classes between 1998 and 2002. A.R. 477.

Scharlatt has been unable to work since October 16, 1996, alleging disability due to Graves' disease[2], depression, difficulty focusing, poor concentration, anxiety, irregular heartbeat, fatigue, muscle aches, and digestive problems. A.R. 487. Prior to that, she worked as film editor for fifteen years. A.R. 485.

At the hearing before the ALJ, Scharlatt testified that she had not worked since October 16, 1996. A.R. at 487. According to Scharlatt, sitting for more than two hours aggravates the pain in her lower back and legs. A.R. at 489. She must lie down for about four hours before she feels well enough to sit for another two hours. A.R. 489. Moreover, she is only able to stand for about an hour and must rest for four hours before she is able to stand for another hour. A.R. 489. Scharlatt testified that about three times a week she isolates herself in her room. A.R. 494. Scharlatt also cares for her son. A.R. 494. She prepares him for school, makes his breakfast and lunch, helps him with his homework, and occasionally drives him to school. A.R. 494-495. Scharlatt also prepares dinner three days a week for her family. A.R. 500.

In May 1996, Scharlatt began seeing Ms. Susan Tieger, MFT[3] for anxiety and depression. Scharlatt saw Ms. Tieger continuously for five years, until she could no longer afford therapy. A.R. 363-417. Scharlatt's first medical visit for her Graves' disease was on November 13, 1997 with Dr. Judith Martin. A.R. 124-126. Dr. Martin diagnosed Scharlatt with possible Graves' disease and exophthalmos, a swelling of the eye caused by Graves'

---

[2] Graves' disease is a form of hyperthyroidism. "Hyperthyroidism results whenever excessive amounts of hormones are produced by the thyroid or from overdosage with thyroid hormones. It occurs when the thyroid escapes from the usual controlling mechanism exerted by the thyroid-stimulating hormone (TSH) and secretes excessive amounts of its hormones." Lawyers' Medical Cyclopedia § 4.19 (5th ed. 2001) at 4-43.

[3] MFT stands for Marriage and Family Therapist.

2

disease. A.R. 124-125. Scharlatt had regular medical visits with her primary treating physician, Dr. Rachelle Halpern, from November 1997 to November 2001. A.R. 209-358.

In February 2000, Scharlatt saw endocrinologist Dr. Francis Greenspan for consultation over Scharlatt's desire to have another baby. A.R. 205. Dr. Greenspan's impression of Scharlatt's Graves' disease was that it was being controlled by anti-thyroid drug therapy. A.R. 205. While Dr. Greenspan was hesitant to take Scharlatt off the anti-thyroid medication because Scharlatt's Graves' disease could recur during pregnancy, she offered a number of options for Scharlatt to consider. A.R. 205. A year later, Scharlatt conferred with another examining doctor, Dr. Myers, about having a child. A.R. 207-208. Dr. Myers diagnosed Scharlatt with Graves' disease, not in remission after treatment, and Graves' opthalmopathy. A.R. 207. She also reported that Scharlatt's Graves' disease had lasted for four years without remission and her age "argues against probable remission." A.R. 207.

## LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, a claimant must establish that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The claimant bears the burden of proving that she suffers from a disability. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).

Regulations promulgated by the Commissioner set forth a five-step sequential analysis to be used by an ALJ in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520. The inquiry is terminated at the stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990). At Steps One through Four, a claimant must demonstrate a severe impairment and an inability to perform past work; the Commissioner bears the burden only if the sequential evaluation process proceeds to Step Five. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

3

At Step One, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled and the claim is denied. If the ALJ determines that the claimant is not currently engaged in "substantial gainful activity," Step Two requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the ALJ compares the claimant's impairment to a listing of impairments. If a claimant's impairment meets or equals an impairment in the listing, a disability is presumed and benefits awarded. See 20 C.F.R. § 404.1520(d). The ALJ proceeds to Step Four only if the claimant's condition does not meet the listing at Step Three. At Step Four, the ALJ considers whether the claimant has sufficient "residual functional capacity" ("RFC") to perform her past work despite the impairment and/or limitations. 20 C.F.R. § 404.1520(e). If the claimant has sufficient RFC, benefits are denied. If not, the burden shifts to the Commissioner at Step Five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

**ALJ'S FINDINGS**

The ALJ determined that Scharlatt was not disabled because she did not have a severe impairment or combination of impairments as required by Step Two. The ALJ concluded at Step One that Scharlatt had not performed "substantial gainful activity" since October 16, 1996. At Step Two, the ALJ ruled that Scharlatt's Graves' disease, her subjective symptoms, and depression did not last for the required twelve continuous months. The ALJ also determined that Scharlatt was not credible in her testimony or complaints. The ALJ based his decision on the fact that the medical evidence from Scharlatt's primary treatment sources revealed that Scharlatt's primary treatment was essentially "routine and conservative in nature." He explained that: (1) Scharlatt had completed her graduate degree in

4

Anthropology in 2003; (2) Scharlatt had not provided "real clinical findings, just ongoing subjective complaints;" and (3) she appeared healthy and in no distress at the hearing.

## DISCUSSION

**A.  STANDARD OF REVIEW**

An ALJ's decision can be set aside only if "the ALJ's findings are based on legal error or are not supported by substantial evidence." Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion.  Id.  Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

When the Appeals Council denies review after evaluating the entire record, including new evidence, that new evidence becomes part of the administrative record to be reviewed by this court on appeal.  See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).  Thus, this court must consider the evidence before both the ALJ and the Appeals Council in reviewing the ALJ's decision. Id.

**B.  ANALYSIS**

To determine whether the ALJ erred in his Step Two analysis, this court will review:  (1) whether Scharlatt has met her evidentiary burden of establishing impairments; (2) whether Scharlatt was credible in her subjective complaints; (3) whether Scharlatt's impairments, including her subjective complaints, were severe; and (4) whether Scharlatt's disability, if any, satisfied the durational requirement.

**I.  Impairments**

Scharlatt contends that the ALJ erred in assessing the severity of her physical and mental impairments at Step Two.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §

5

404.1508. Signs are anatomical, physiological or psychological abnormalities that must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities. They must also be shown by observable facts that can be medically described and evaluated. 20 C.F.R. § 404.1528(b). Laboratory findings are anatomical, physiological or psychological phenomena which can be shown by the use of medically acceptable laboratory techniques, including psychological tests. 20 C.F.R. § 404.1528(c). Scharlatt "must present complete and detailed objective medical reports of her conditions from a licensed medical professional." Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).

Here, the ALJ made findings regarding Scharlatt's physical and mental impairments. He found Scharlatt's primary impairment to be Graves' disease, with associated symptoms "waxing and waning," and depression. A.R. 22. As for Scharlatt's mental impairments, the ALJ found that there were "no real clinical findings, just ongoing subjective complaints." A.R. 23. He also reasoned that Scharlatt's therapy was from a Marriage and Family therapist, "which is not considered medical evidence, but more in the nature of third party statements." A.R. 24.

      a.    <u>Physical Impairments</u>

Scharlatt provided sufficient medical evidence consisting of "signs, symptoms and laboratory findings" to establish a physical impairment. Neither party disputes that the medical evidence establishes that Scharlatt has Graves' disease. The ALJ also noted that Scharlatt's primary impairment is Graves' disease, A.R. 22. and the record is replete with medical evidence of Scharlatt's Graves' disease. See A.R. 125, 201, 205, 207, 352.

      b.    <u>Mental Impairments</u>

The ALJ properly found that Scharlatt did not provide sufficient medical evidence to establish a mental impairment. Therefore, Scharlatt did not meet her evidentiary burden pursuant to 20 C.F.R. § 404.1508. Scharlatt's primary evidence of her mental condition included therapy notes by Susan Tieger, MFT. The ALJ discounted Susan Tieger's reports

because she was a Marriage and Family therapist. A.R. 24. The ALJ correctly asserted that statements by a Marriage and Family therapist are not medical evidence and should be viewed as third party statements, or lay witness testimony. See 20 C.F.R. § 404.1513. A.R. 23. Lay witness testimony may be used as evidence to assess the *severity* of impairments, but not as evidence to *establish* an impairment. See 20 C.F.R. § 404.1513 (d)(1). Moreover, Dr. Halpern, Scharlatt's treating physician, reported that Scharlatt had a "tendency to depression - not clinically depressed." A.R. 357. Because Scharlatt has not met her evidentiary burden to establish her mental impairment, this court will not consider Scharlatt's mental impairment in its review of the ALJ's ultimate disability determination.

## II. Subjective Complaints

Scharlatt contends that the ALJ erred in his evaluation of her subjective complaints. The Ninth Circuit follows the "Cotton standard" for evaluating pain or other symptoms in Social Security disability cases. The claimant must first produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain or symptoms. Once this evidence is produced, the claimant is not required to provide medical findings that support the *severity* of the pain or symptom. See Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (citing Cotton v. Bowen, 199 F.2d 1403, 1407 (9th Cir. 1986)); Social Security Ruling 96-3p. Thus, an adjudicator may not discredit the claimant's allegations of pain or other symptoms solely on the ground that the allegations are unsupported by objective medical evidence. Bunnell, 947 F.2d at 343.

While the ALJ is responsible for determining credibility, the ALJ's findings "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Also, "[g]eneral findings are insufficient, rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. Absent affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering clear and convincing reasons. Id. at 722.

An individual's statements as to pain and other symptoms will not alone establish

disability.  See 20 C.F.R. § 404.1529(c)(4).  Likewise, the ALJ is not required to believe every allegation of disabling pain lest "disability benefits would be available for the asking."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)  In making a credibility determination, the ALJ must consider the entire case record.  See 20 C.F.R. 404.1529(c)(4); Social Security Ruling 96-7p.  In addition to the objective medical evidence, the adjudicator *must* consider:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p.  The ALJ may also consider any personal observations that he has made of the claimant.  Fair v. Bowen at 602; Morgan v. Comm'r. of Soc. Sec. Admin, 169 F.3d 595, 600 (9th Cir. 1999).

Scharlatt has satisfied the Cotton standard by producing medical evidence of an underlying impairment which was reasonably likely to be the cause of the alleged pain or other symptoms.  Symptoms associated with Graves' disease include: nervousness, fine tremors of the hands, rapid pulse, muscle weakness, increase in thirst and urine output, increase in the frequency of bowel function, easy fatigue, and breathlessness on exertion.  Lawyers' Medical Cyclopedia § 4.19 at 4-43.  Scharlatt complained of difficulty focusing, poor concentration, irregular heartbeat, fatigue, muscle aches, and digestive problems.  A.R. 487.  All of these

symptoms can reasonably be caused by Scharlatt's Graves' disease.  Therefore, Scharlatt was not required to provide medical findings that supported the *severity* of her pain or symptoms.  Moreover, the ALJ could not discredit Scharlatt's allegations of pain or other symptoms solely on the ground that the allegations were unsupported by objective medical evidence.  Bunnell, 947 F.2d at 343.

Here, the ALJ found Scharlatt's subjective complaints lacking in credibility.  The ALJ reviewed the medical evidence, finding that Scharlatt's medical visits were "regular trips to the doctor to seek relief/treatment for her symptomatic complaints regarding her Graves' disease" and were "routine and conservative in nature." A.R. 22.  He also noted evidence which reflected that Scharlatt's Graves' disease was being controlled by anti-thyroid drug therapy and that she was "functioning normally, despite Graves' disease." A.R. 22, 23. Moreover, Scharlatt testified that she had completed her Masters Degree in Anthropology in 2003, she was caring for her young son, and performing household chores off and on.  A.R. 23.  The ALJ observed that at the hearing, Scharlatt appeared "healthy . . . [and] in no distress."  A.R. 23. She had no problem "sitting, standing, walking, or testifying . . . [or] with her concentration and memory."  A.R. 23.

The ALJ discredited Scharlatt's subjective complaints for four main reasons.  First, the ALJ emphasized the fact that Scharlatt attended school in November 1997 and August 2000, and completed her Masters Degree in 2003.  A.R. 23.  Scharlatt provided for consideration by the Appeals Council, an unofficial transcript from San Francisco State University. The Appeals Council examined this additional evidence, but denied review nonetheless.  A.R. 9.

This new evidence, however, is relevant to Scharlatt's credibility.  The transcript verifies that while Scharlatt did obtain her Masters Degree in 2003, most of her course work was completed prior to her October 1996 onset date.  In fact, Scharlatt did not complete any classes between 1998 and 2002.  A.R. 477.  The transcript shows that Scharlatt took one three-unit course in Fall 1996.  A.R. 476.  In Fall 1997, Scharlatt was required to register for two courses.  A.R. 477.  She completed one course, but explained that "because [she] was ill,

9

1 [she] was allowed. . . to study at home." A.R. 473.  She deferred completion of the other
2 course until June 2003.  A.R. 477.  In 1998, Scharlatt registered for two classes, including her
3 Master's thesis.  A.R. 477.  She deferred completion of both classes until November 2002,
4 and August 2003, respectively.  A.R. 477.  Scharlatt explained that she was only able to study
5 and write a few hours a week at home, and required several illness-related extensions.  A.R.
6 473.  She completed her thesis five years after first registering for it, and nine years after
7 starting what ordinarily is a two-year program[4].  A.R. 473.

8       Moreover, in finding that Scharlatt attended school in August 2000, the ALJ cited Dr.
9 Halpern's medical report dated August 31, 2000.  A careful reading of this report, however,
10 reflects that Dr. Halpern did not reference Scharlatt starting school, but instead referenced
11 Scharlatt's, "*[s]on* starting school next week."  A.R. 249.  On balance, this court finds the ALJ's
12 reliance on Scharlatt's schooling as detrimental to her credibility to be misplaced.

13       The ALJ's second reason for discrediting Scharlatt's claims was because her medical
14 visits were "primarily routine out-patient care."  A.R. 24.  The ALJ, however, has not offered
15 any clear and convincing reasons regarding why Scharlatt's availing herself of routine primary
16 care undermines her credibility.  Moreover, the Commissioner has not provided, and the court
17 has not found any authority to support the ALJ's position.  The record shows that Scharlatt had
18 regular visits with Dr. Halpern between 1997 and 2001.  There are even a few years in which
19 Scharlatt saw Dr. Halpern twice a month or every month.  A.R. 209-358.  The Commissioner
20 further asserts that Scharlatt's lack of "emergency room visits, in patient care, surgery"
21 discredits her subjective complaints, however, the court does not find these facts discrediting.

22       Third, the ALJ discredited Scharlatt's claims because medical evidence showed that
23 her Graves' disease was "under excellent control" and that she was "functioning normally."
24 A.R. 22, 23.  The Commissioner cites to a number of cases for the proposition that a

---

[4]There is, however, a discrepancy between Scharlatt's letter and the transcript.  Scharlatt states that she could not attend any classes during 1997.  A.R. 473.  The transcript shows two make-up courses completed in May 1997 and August 1997.  A.R. 476.  It is unclear whether Scharlatt completed these courses by studying at home or otherwise.

controlled impairment either by medication or otherwise, cannot serve as the basis for finding a disability. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996); Gregory v. Bowen, 844 F.2d 644, 667 (9th Cir. 1988); Odle v. Heckler, 707 F.2d 430, 440 (9th Cir. 1983).

The Commissioner relies on cases in which the controlled nature of an impairment is but one factor in the determination of whether a claimant is disabled - not the determining factor. Moreover, in the cases relied on by the Commissioner, the ALJ found the claimants' impairments to be severe at Step Two, but not disabled at Step Five. In contrast, in this case, the ALJ found that Scharlatt's impairments were not severe, and she was therefore not disabled, at Step Two[5].

Fourth, the ALJ discredited Scharlatt's credibility because of his personal observations of Scharlatt at the hearing. The ALJ's use of his personal observations as one factor in his credibility determination was proper. He did not base his entire decision upon Scharlatt's appearance at the hearing and considered other evidence in the record. However, as explained above, this court finds the ALJ's analysis of the other evidence was improper. Therefore, the ALJ's overall assessment of Scharlatt's credibility lacked substantial evidentiary support.

In conclusion, the ALJ failed to provide clear and convincing reasons for rejecting Scharlatt's testimony. Accordingly, the court remands this issue so the ALJ can formulate "specific, cogent reasons" for discrediting Scharlatt's credibility. Reddick, 157 F.3d at 722. On remand, the ALJ must take into consideration Susan Tieger's therapy notes as lay witness testimony. As explained above, lay witness testimony may be used as evidence to assess the severity of impairments. See 20 C.F.R. § 404.1513 (d)(1). Ms. Tieger treated Scharlatt consistently for over five years and documented her subjective complaints. If the ALJ "expressly determines to disregard [lay witness] testimony [about claimant's symptoms], . . .

---

[5] Additionally, this court notes that on February 22, 2001, Dr. Myers diagnosed Scharlatt with "Graves' disease, not in remission after treatment." A.R. 207. She also reported that Scharlatt's Graves' disease had lasted for four years without remission and her age "argues against probable remission." A.R. 207.

he must give reasons that are germane to each witness." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (internal quotations omitted)). The ALJ also failed to consider the above listed factors required by Social Security Ruling 96-7p, and should do so on remand.

### III. Severity

A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[6]." See Bowen at 154 n.11 (1987); 20 C.F.R. § 404.1520(c). At Step Two, the ALJ is required to consider the combined effect of all of the claimant's impairments regardless of whether any single impairment would be considered "severe" on its own. See 20 C.F.R. § 404.1523. The Ninth Circuit has defined Step Two as a "de minimis screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001); 20 C.F.R. § 404.1523. The ALJ was allowed to deny Scharlatt's claim at Step Two only if the evidence showed that Scharlatt's impairments were not medically severe, i.e., did not have more than a minimal effect on her physical or mental abilities to perform basic work activities. See Social Security Ruling 85-28.

This court concludes for the reasons set forth above that Scharlatt established a severe physical impairment sufficient to meet the de minimus standard of Step Two. On remand, the ALJ should take into account Scharlatt's subjective complaints as well. This court makes no determination regarding the outcome at Step Two, and, if necessary, Steps Three, Four and Five, which is more appropriately left to the ALJ to consider on remand.

### IV. Duration Requirement

Scharlatt also claims that the ALJ erred in finding that a severe impairment must last twelve continuous months prior to the date last insured. To be entitled to disability insurance benefits, a claimant must demonstrate that he or she has a disability prior to the last insured

---

[6] Basic work activities are abilities and aptitudes necessary to do most jobs. These include: (1) physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) understanding, carrying out, and remembering simple instructions; (3) and responding appropriately to supervision, co-workers and usual work situations. 20 C.F.R. § 1521(b).

12

1  date, and must have disability insured status in the first full month that the claimant is disabled.

2  See Morgan v. Sullivan, 945 F.2d 1079, 1080 (9th Cir. 1991); 20 C.F.R. § 404.131. The

3  disability must have lasted or must be expected to last for a continuous period of at least

4  twelve months.  20 C.F.R. § 404.1509.

5  Here, the ALJ found that Scharlatt did not meet the durational requirement *"on or*

6  *before* her date last insured." A.R. 24.  However, the durational requirement (i.e., disability for

7  twelve continuous months) does not have to be met on or before the date last insured.  All that

8  is required is that the claimant: (1) establish a disability prior to the date last insured; (2) have

9  disability insured status in the first full month that claimant is disabled; and (3) the disability

10  must have lasted or be expected to last for twelve continuous months.  See Morgan, 945 F.2d

11  at 1080; 20 C.F.R. § 404.131; 20 C.F.R. § 404.1509.

12  Scharlatt alleged disability beginning on October 16, 1996.  Her date last insured was

13  December 31, 1997.  A.R. 22.  Scharlatt's medical evidence shows her first medical visit for

14  her physical impairment to be on November 13, 1997 with Dr. Judith Martin.  AR. 124-126.

15  Therefore, Scharlatt must establish one full month of disability by December 31, 1997, and the

16  disability must have lasted for twelve continuous months.  Given that the sequential evaluation

17  process has not been completed, the court cannot determine whether Scharlatt has met the

18  durational requirement.  On remand, the ALJ must proceed with the sequential evaluation

19  process, if necessary, and determine whether Scharlatt has met the durational requirement.

20  **CONCLUSION**

21  For the foregoing reasons, Scharlatt's motion for summary judgment is GRANTED.

22  The Commissioner's cross-motion for summary judgment is DENIED.  Substantial evidence

23  does not support the ALJ's determination at Step Two that Scharlatt was not disabled.

24  Additionally, the ALJ failed to provide clear and convincing reasons to question Scharlatt's

25  credibility.  On remand, the ALJ must consider Susan Tieger's testimony and the list of factors

26  pursuant to Social Security Ruling 96-7p.

27  This order fully adjudicated the motions listed at Nos. 9 and 10 of the clerk's docket for

28

this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 12, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge

14