UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMMY SCHARLATT,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____/

No. C 04-4724 PJH

**ORDER GRANTING IN PART REQUEST FOR ATTORNEY'S FEES**

Before the court is claimant's counsel's motion for attorney's fees. Having carefully reviewed the parties' papers and considered the relevant legal authority, the court hereby GRANTS in part counsel's motion, for the reasons below.

## BACKGROUND

Claimant, Emmy Scharlatt, filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("SSA"). The Social Security Commissioner ("Commissioner") denied her application initially and upon reconsideration. On June 8, 2004, the Appeals Council denied Scharlatt's request for review of the decision of the Administrative Law Judge.

Scharlatt filed an appeal with this court, and on July 12, 2005, the court reversed the decision of the ALJ, remanding the case under sentence four of 42 U.S.C. § 405(g). On July 19, 2005, the parties stipulated that the Commissioner would pay claimant's attorney, Marc V. Kalagian ("Kalagian"), $3,600.00 pursuant to the Equal Access to Justice Act ("EAJA") for attorney's fees incurred in this court action. EAJA Stip. 1.

On remand on January 22, 2007, the Commissioner awarded Scharlatt $60,947.00 in past due benefits. In accordance with the Commissioner's internal guidelines, Scharlatt

was advised that the administration was withholding $15,236.75, or 25% of her award, in the event that Scharlatt's attorney's fees were approved. See Kalagian Decl., Exh. 3. The Commissioner continues to withhold those funds. On July 23, 2008, Kalagian filed the instant motion for attorney's fees, requesting that the court approve fees in the amount of $9,900.00 pursuant to 42 U.S.C. § 406(b).[1]

## DISCUSSION

### A. Legal Standards

Attorneys handling social security proceedings may seek fees for their work under both the EAJA and the SSA. While the government pays an award pursuant to the EAJA, an award pursuant to § 406(b) of the SSA is paid out of a successful claimant's past-due benefits. Russell v. Sullivan, 930 F.2d 1443, 1446 (9th Cir. 1991), abrogated on other grounds by Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir. 2001). Congress' intent in implementing § 406(b) was to promote social security claimants' access to competent representation by making it easier for attorneys to collect fees. See Gisbrecht v. Barnhart, 535 U.S. 789, 805-06 (2002). In so doing, however, Congress also sought to protect claimants from excessive fees. Id.

Unlike EAJA, § 406(b) does not contain a specific time deadline for the filing of an attorney's fee request. Compare 28 U.S.C. § 2412(d)(1)(B), with 42 U.S.C. § 406(b)(1)(A). Moreover, the implementation of a strict deadline under § 406(b) could be problematic because the amount of fees owed under a contingency arrangement may not be established for months after remand, when the SSA determines the amount of the claimant's award. See McGraw v. Barnhart, 450 F.3d 493, 504 (10th Cir. 2006) (finding that the fourteen day deadline applicable to motions for attorney fees pursuant to FRCP 54 is not practical in SSA fee award cases).

---

[1] Kalagian acknowledges that the $3,600.00 in EAJA fees should be deducted from any additional amount approved in conjunction with this request. Accordingly, Kalagian is actually requesting an additional $6,300.00.

Nevertheless, the court has discretion to award attorney's fees in social security cases. See 42 U.S.C. 406(b)(1)(A) ("the court *may* determine and allow as part of its judgment a reasonable fee" for legal representation). In making this determination, the court considers any unreasonable delay and whether the attorney was responsible for such delay. See Gisbrecht, 535 U.S. at 808 ("If the attorney is responsible for delay . . . a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court.").

In accordance with the Commissioner's internal agency litigation manual, HALLEX, following an award of fees on remand, the Commissioner will withhold 25% of the past-due benefits for direct payment of fees to the attorney. See HALLEX I-1-2-71.[2] It is then the attorney's responsibility to file a fee petition. See id.; see also HALLEX I-1-2-55. If within sixty days of the award, the Commissioner does not receive a fee petition or a statement of intent to petition for fees from the attorney, then the Commissioner will issue a "20-day closeout letter" advising the attorney that if he does not file a fee petition or request for an extension to file a petition within twenty days, the Commissioner will release the withheld benefits to the claimant. HALLEX I-1-2-55. Thus, depending upon whether the attorney responds to the closeout notice in a timely manner, the Commissioner will either continue holding the award for payment of fees, or release the full award amount to the claimant. Id.

B.   Parties' Arguments

In his motion, Kalagian requests the court to order attorney's fees in the amount of $9,900.00, pursuant to 42 U.S.C. § 406(b), with a credit to Scharlatt for EAJA fees previously paid in the amount of $3,600.00. Kalagian states that he expended before this

---

[2] While not binding, HALLEX has been deemed by the Ninth Circuit to be persuasive authority. Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008) (citing Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000)) ("HALLEX is strictly an internal Agency manual, with no binding legal effect on the Administration or this court . . . . Nevertheless, as an Agency manual, HALLEX is 'entitled to respect' under Skidmore v. Swift & Co., 323 U.S. 134, to the extent that is has the 'power to persuade.'").

court 20.9 hours of attorney time at an hourly rate of $450.00, and 3.25 hours of paralegal time at an hourly rate of $148.75. Kalagian argues that the court should look to the reasonableness of the contingency fee contract to ensure that counsel does not receive a windfall. Gisbrecht, 535 U.S. at 807.

Kalagian argues that the requested amount of attorney's fees is reasonable. First, he notes that in the prior stipulation and award of EAJA fees in the amount of $3,600.00, the government conceded and this court agreed that the time expended was reasonable.

Next, Kalagian argues that he actually performed in 20.9 hours what an average attorney performs in 33 hours. He notes that while a client should not be "penalized because the attorney handling the case took more time than is prudently necessary," the same principle should apply to a case where the attorney took less time than is typical to handle a case. Pl.'s Mot. 8-9. Kalagian emphasizes that "this is not the case of an unexpected turn of luck but rather the result" of his conscious effort. Id. at 9.

Moreover, Kalagian argues that the court should not use lodestar data to determine his fees. He notes that Scharlatt retained him and his firm on a contingency fee basis rather than an hourly basis, and that his firm rarely represents clients on an hourly basis.

Nevertheless, Kalagian has submitted *The 200 Small Law Firm Economics Survey* as proof that the average hourly rate in 2000 for the proprietor or partner of a small law firm of twelve or fewer attorneys in California was $250.00. Kalagian further states that according to the survey, the upper 10% of hourly rates for proprietors was $336.00. Kalagian cites several cases to support his request that the court use the ninth decile to calculate a hypothetical lodestar and assess whether the contingent fee falls into the range of reasonable. Kalagian urges the court to consider the rise in the cost of legal services in determining the hypothetical lodestar. After accounting for this increase, Kalagian suggests a hypothetical lodestar of $9,484.99.

Kalagian then looks to the twelve factors that the Ninth Circuit has used in evaluating attorney fees under a lodestar method, which include:

4

1.  The time and labor required;
2.  The novelty and difficulty of the questions involved;
3.  The skill requisite to perform the legal service properly;
4.  The preclusion of other employment by the attorney due to acceptance of the case;
5.  The customary fee;
6.  Whether the fee is fixed or contingent;
7.  Time limitations imposed by the client or the circumstances;
8.  The amount involved and the results obtained;
9.  The experience, reputation, and ability of the attorneys;
10. The "undesirability" of the case;
11. The nature and length of the professional relationship with the client; and
12. Awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

In explaining the reasonableness of his fee amount, Kalagian emphasizes that the nature of a contingency fee practice results in higher average rates than those of attorneys who charge hourly rates. He notes that contingency fee attorneys often work on several cases without any payment, in order to "give the keys to the courthouse to the indigent permitting them to retain qualified counsel." Pl.'s Mot. 16. Furthermore, the cases on which contingency fee counsel are paid have to make up for cases on which counsel is never paid or paid very little.

Although Kalagian maintains that the lodestar analysis is mostly "dead," he argues that the "awards in other cases" prong continues to influence courts. He cites several cases where courts found reasonable hourly attorney rates that exceeded his requested rate of $450.00 by several hundred dollars. Kalagian notes that in Garrett v. Barnhart, the court awarded another attorney at Kalagian's law firm $5,714.75 for 7.9 hours of work,

5

which is equal to an hourly rate of $723.39. <u>Garrett v. Barnhart</u>, CV-F 03-5497 (E.D. Cal. Jan 24, 2006).

In opposition, the Commissioner does not dispute the amount of fees Kalagian has requested. The Commissioner agrees that a fee of $9,900.00 for 20.9 hours of attorney work is reasonable. This figure amounts to 16.24% of the past-due benefits amount, which is significantly lower than the 25% maximum. <u>See</u> Gisbrecht, 535 U.S. at 807 (agreements for fees exceeding 25% of the past-due benefits are unenforceable).

However, the Commissioner argues that the motion for attorney's fees is untimely, and that if the court finds the delay to be unreasonable, it should deny or reduce the award of attorney's fees. The Commissioner nevertheless notes that § 406(b) of the Act does not contain a specific time period for the filing of attorney's fees.[3]

The Commissioner further notes that the issue of timeliness regarding the filing of § 406(b) petitions has not been settled in this circuit. The Commissioner maintains that the court should not apply a strict deadline for filing because of the nature of social security cases. However, he agrees that the court should consider any unreasonable delay in bringing the petition, as § 406(b) awards are discretionary.

The Commissioner thus argues that Kalagian's motion, filed more than three years after the court's July 12, 2005 order and judgment, is dilatory. Although the Commissioner concedes that the administration did not actually award Scharlatt's benefits until January 2007, approximately 1.5 years prior to the filing of this motion, he contends that Kalagian's failure to explain the delay in filing the motion is unreasonable. Thus, the Commissioner requests that the court evaluate this unexplained delay and determine whether the motion for attorney's fees should be denied or reduced.

---

[3] The Commissioner concedes that Federal Rule of Civil Procedure ("FRCP") 54(d) should not govern the instant action, as that rule requires counsel to file a motion for attorney's fees within fourteen days after judgment is entered, yet SSA awards are rarely determined within that period.

6

In reply, Kalagian argues that the Commissioner has not shown that his failure to file the petition sooner has prejudiced Scharlatt. Kalagian acknowledges that a reduction is warranted if the delay in filing the petition would benefit counsel, but he asserts that he has not benefitted from any delay. Significantly, though, Kalagian has not explained his delay in filing the instant motion, other than to assert that the Commissioner did not send him a "closeout" notice. Kalagian contends that "[t]he court should never find a fee petition untimely unless the Social Security Administration properly released the withheld amounts to the claimant after sending a proper 'closeout' notice to provide all parties with due process." Pl.'s Mot. 3. Thus, because the Commissioner continues to withhold the payment of fees in this case, Kalagian maintains that he filed the fee petition within a reasonable period of time.

C.   Analysis

The central issue the court must resolve is whether Kalagian's motion for attorney's fees is timely. However, the court will first discuss the reasonableness of the requested amount even though the Commissioner does not contest this amount.

1.   Reasonableness of Fee Amount

Courts have an independent duty to review contingency-fee arrangements in order to assure that they yield reasonable results in particular cases. However, "Congress has provided one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits. Within the 25 percent boundary . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." Gisbrecht, 535 U.S. at 807.

Kalagian has requested a fee of $9,900.00 for 20.9 hours of attorney work and 3.25 hours of paralegal time. According to Kalagian's motion papers, he has been practicing social security law since 1990, and his firm has received fee awards of up to $350.00 per hour both under fee shifting statutes and in a limited number of hourly cases handled by Kalagian.

While the hourly rate of $450.00 that Kalagian requests is greater than his previous fee awards, the total amount sought is equivalent to only 16.24% of Scharlatt's past-due benefits amount of $60,947.00.  Thus, the requested $9,900.00 falls well within Congress' 25% mandate.  Moreover, Kalagian has noted that the court should credit Scharlatt for the EAJA fees previously paid in the amount of $3,600.00.  Accordingly, the court finds that the amount of the fee request is reasonable.

        2.       Timeliness of the Motion

The Ninth Circuit has not yet considered the issue of when a motion for § 406(b) attorney's fees must be filed in order to be timely.  The other circuits that have considered the issue have reached two different resolutions.  On the one hand, the Fifth and Eleventh Circuits have applied FRCP 54(d)(2), which requires that a motion for attorney's fees be filed within fourteen days after the entry of judgment.  Pierce v. Barnhart, 440 F.3d 657, 663-64 (5th Cir. 2006); Bergen v. Commissioner of Social Sec., 454 F.3d 1273, 1277 (11th Cir. 2006).  In applying FRCP 54, the Eleventh Circuit in Bergen did not, however, read the rule literally.  Bergen, 444 F.3d at 1283.  Instead, the court held that the fourteen day period would begin to run from the day that the award notice is issued.  Id.

Alternatively, the Tenth Circuit has applied a "reasonable time" standard using FRCP 60(b)(6), which allows a court to relieve a party or its legal representative from a final judgment, order, or proceeding for any reason that justifies relief.  McGraw, 450 F.3d at 505.  The McGraw court thus concluded that a motion for § 406(b)(1) fees must be filed within a reasonable time of the Commissioner's decision to award benefits.  Id.

Given the absence of controlling Ninth Circuit law, there is no clear answer as to whether the request was timely.  The reasonable time standard does, however, appear to be the appropriate standard to apply here given the agreement of the parties that the Rule 54 deadline should not be applied to social security appeals.  Applying the "reasonable time" standard here, Kalagian's argument suggests to the court that he typically relies upon receipt of a closeout notice from the Commissioner before filing a petition for attorney's

8

fees, and not having received such a notice, believes that the year and a half delay was therefore reasonable.   While the court questions the wisdom of this practice, the court will give Kalagian the benefit of the doubt and accept that this is how his office operated at least in this instance.  In the future, however, the court would not likely be persuaded by this excuse for a similar oversight.

The delayed filing of the petition has not prejudiced the government, nor does it appear to have benefitted Kalagian in any way.  However, Scharlatt has indeed been prejudiced by the untimely motion to the extent that it delayed her receipt of her full award. While Kalagian seeks an additional $6,300.00 in fees above and beyond the $3,600.00 in EAJA fees already awarded, the court notes that the Commissioner has withheld $15,236.75 of the award.  Kalagian's delay has therefore deprived Scharlatt of the timely receipt of the additional amount of $8,936.75.

The court finds that Scharlatt should not be prejudiced by Kalagian's delay. Accordingly, although the court approves Kalagian's motion for $9,900.00 in attorney's fees, the court ORDERS that Kalagian's award of the remaining $6,300.00 in fees be reduced to account for the prejudice that resulted to Scharlatt because of his delay.  The Commissioner is ordered to deduct from Kalagian's fee, an amount equal to the interest on the remaining $8,936.75 owed to Scharlatt, as calculated pursuant to the statutory interest rate, beginning March 23, 2007, sixty days after the date of Scharlatt's award on remand, through July 23, 2008, the day that Kalagian filed the instant motion for attorney's fees, and to add that amount to the $8,936.75 owed to Scharlatt.

IT IS SO ORDERED.

Dated: November 21, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge